UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DEREK W. WHITE,

    Plaintiff,                                        Case No. 3:20-cv-130

vs.

KROESCHELL FACILITY                  District Judge Michael J. Newman
SERVICES, INC.,                            Magistrate Judge Peter B. Silvain, Jr.

    Defendant.

---

**ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 17); AND (2) TERMINATING THIS CASE ON THE DOCKET**

---

This employment discrimination case is before the Court on Defendant's motion for summary judgment. Doc. No. 17. The motion is fully briefed and now ripe for review. The following facts are undisputed.

**I.**

Plaintiff is an African-American male who, at all relevant times, was over the age of 40. Doc. No. 2 at PageID 17. From February to December 2017, Defendant employed Plaintiff as a custodian. Doc. No. 13 at PageID 138. Defendant assigned him to a building maintenance team at the Wright-Patterson Air Force Base. *Id.*

On December 12, 2017, Defendant's Executive Vice President and Corporate Risk Manager Dave Stavropoulos learned from a custodial supervisor that Plaintiff had reported he was being sexually harassed. Doc. No. 15 at PageID 337. Specifically, Plaintiff alleged that on February 20, 2017, his female supervisor gave him a "lap dance" before a meeting. Doc. No. 13 at PageID 253. Plaintiff claimed the female supervisor constantly harassed him after that, prompting his request to be assigned to a different shift. *Id.*

Stavropoulos met with Plaintiff in person, who reiterated the lap dance allegation and claimed that he was also experiencing racial and age-based discrimination from several of his supervisors. Doc. No. 15 at PageID 337. He explained that, on one occasion, the same female supervisor who gave him a lap dance called him a "dot," which he understood as a reference to the fact he was the only person of color on the custodial team. Doc. No. 13 at PageID 78–79.

Stavropoulos's conversations with Plaintiff's colleagues painted a different picture. Doc. No. 15 at PageID 338. Four women revealed that Plaintiff had either touched or grabbed them or made comments that made them feel uncomfortable. Doc. No. 15 at PageID 356–59. One woman reported that Plaintiff grabbed her shoulders from behind; once stated she was "a good looking girl and I'm going to sweep you off to a deserted island"; and, on several occasions, left notes on her computer that read, "Hello beautiful." *Id.* at PageID 358. Another woman recalled an instance where Plaintiff reached for and tried to fix her work uniform collar. *Id.* at PageID 359. Before a staff meeting, a different woman explained that, as she walked by Plaintiff, who was sitting, he grabbed her arm and pulled her down to his waist. *Id.* at PageID 356. Plaintiff also allegedly tried hugging a different female employee on several occasions and once watched her eat a cream-filled doughnut while making noises that made her feel uncomfortable. *Id.* at PageID 357.

Two employees reported that Plaintiff often rummaged through a base dumpster and removed building materials. *Id.* at PageID 338, 352, 357. Plaintiff believed he had permission to take the items and explained he used them for his house-flipping business. Doc. No. 13 at PageID 74.

Stavropoulos found the female employees to be credible and concluded that Plaintiff's account was unbelievable. Doc. No. 15 at PageID 338. He determined that Plaintiff violated

2

Defendant's sexual harassment policy and its prohibition on removing company property. *Id.* at PageID 493. Stavropoulos terminated Plaintiff's employment soon thereafter. *Id.*

Plaintiff filed a three-count complaint in the Montgomery County, Ohio Court of Common Pleas alleging Defendant fired him because of his race and age and that he was subject to a sexually hostile work environment in violation of Ohio Rev. Code §§ 4112.02, 4112.14, and 4112.99. Doc. No. 2 at PageID 19–20. Defendant timely removed the complaint to this Court. Doc. No. 1.[1] Defendant now requests summary judgment on Plaintiff's claims. Doc. No. 17.

## II.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable

---

[1] Defendant is a Texas corporation with its principal place of business in Illinois. Doc. 1 at PageID 3. Plaintiff is an Ohio resident. Doc. No. 2 at PageID 17. The Court therefore has subject matter jurisdiction over this case. 28 U.S.C. § 1332.

to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

Even affording Plaintiff all favorable inferences, he fails to show there is a genuine dispute of material fact that would preclude summary judgment on any of his claims. His allegations concern two specific incidents -- the lap dance and "dot" remark -- and general accusations of consistent mistreatment. Doc. No. 22 at PageID 522–26. But, as explained below, those allegations, standing alone, do not satisfy Plaintiff's burden to state a *prima facie* case under any of the relevant standards. For that reason, the Court will grant Defendant's summary judgment motion.

### A.

Ohio Rev. Code § 4112.02(A) and Title VII of the Civil Rights Act of 1964 contain similar prohibitions of race-based discrimination. *See* 42 U.S.C. § 2000e-2; Ohio Rev. Code § 4112.02(A). Ohio courts have repeatedly held that federal case law developed under Title VII is "generally applicable" to cases arising under section 4112.02. *See, e.g.*, *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 575 N.E.2d 1164, 1167 (Ohio 1991); *Brown v. Corr. Reception Ctr.*, 146 N.E.3d 621, 628 (Ohio Ct. App. 2020); *see also Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003).

Intentional discrimination under Title VII can be proven either through direct or circumstantial evidence. *See, e.g.*, *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). When direct evidence of discrimination does not exist, a plaintiff may establish an inference of discrimination

4

by satisfying the burden-shifting framework set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). To state a claim of race discrimination using direct evidence, Plaintiff must show Defendant had "a predisposition to discriminate and that [it] acted on that predisposition." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014). Plaintiff falls well short of this standard.

Plaintiff argues that his supervisor's "dot" remark revealed her racial animus and constitutes direct evidence of discrimination. Doc. No. 22 at PageID 522–23. But it was Stavropoulos, not Plaintiff's immediate supervisor, who had authority to, and ultimately did, terminate Plaintiff's employment. Doc. No. 15 at PageID 493. Plaintiff offers no direct evidence suggesting Stavropoulos, or anyone else involved in his termination, had a predisposition to discriminate against him based on his race. So even if, *arguendo*, the supervisor intended her "dot" comment to be racially insensitive, a reasonable jury could not find it motivated Stavropoulos's decision to terminate Plaintiff. *Cf. Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 512 (6th Cir. 2012) ("Isolated and ambiguous comments are insufficient to support a finding of direct discrimination") (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005)).

Plaintiff also fails to state a *prima facie* case of race discrimination using circumstantial evidence. A *prima facie* case requires a showing that the employee: (1) "is a member of a protected class"; (2) "was qualified for the job"; (3) "suffered an adverse employment decision"; and (4) "was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)

5

(quotation omitted).  Though Plaintiff satisfies the first three elements, he produces no evidence to show he experienced disparate treatment.

Plaintiff does not claim he was replaced by a person of a different race.  Doc. Nos. 2, 22. Nor does he identify a comparator who behaved like he did but was not terminated.  *See, e.g.*, *Spratt v. FCA US LLC*, 812 F. App'x 348, 353 (6th Cir. 2020).  Plaintiff instead alleges that, while other custodial workers were permitted to work overtime, his requests to do so were consistently rejected because of his race.  Doc. No. 22 at PageID 526.  But he fails to identify a custodial worker similarly situated to him in all relevant aspects who was allowed to work overtime.  Consequently, no reasonable jury could find he was denied opportunities to work overtime because of his race. *See, e.g.*, *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 589 (6th Cir. 2014) (affirming summary judgment dismissal because the plaintiff failed to demonstrate she was treated differently or less favorably than a similarly situated coworker outside the protected class).  Plaintiff's race discrimination claim, therefore, fails as a matter of law.

**B.**

Plaintiff's age discrimination claim suffers from similar deficiencies.  Age discrimination claims brought under Ohio law are analyzed under the same standards applicable to the Age Discrimination in Employment Act of 1976 ("ADEA").  29 U.S.C. § 623(a); *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).  Plaintiff attempts to prove his age discrimination claim using circumstantial evidence through the *McDonnell-Douglas* framework.  Doc. No. 22 at PageID 527.

To show disparate treatment under the ADEA, Plaintiff must demonstrate "that a substantially younger person replaced the plaintiff, or [show] that similarly situated, non-protected employees were treated differently than the plaintiff."  *Moore v. AMPAC*, 645 F. App'x 495, 498 (6th Cir. 2016).  Plaintiff and the proffered comparators must be similar "in all *relevant* respects."

6

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original). Courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id.* at 352.

Plaintiff does not allege he was replaced by someone younger following his termination. Doc. Nos. 2, 22. Instead, Plaintiff contends that, while the younger employees were allowed to go home at the end of their shifts, his supervisors took advantage of his age by forcing him to work late. Doc. No. 22 at PageID 527. Plaintiff does not identify the name, or the age, of these coworkers. Nor does he show with documentary or other evidence that those employees were consistently permitted to leave on time while he worked late. Without a similarly situated comparator, Plaintiff cannot establish an inference of age discrimination. *See, e.g.*, *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521–23 (6th Cir. 2008). Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's age discrimination claim.

## C.

Finally, Plaintiff alleges he was the victim of sexual harassment, with the lap dance incident being the most salient example. Doc. No. 22 at PageID 257.[2] To be actionable under Ohio Rev. Code § 4112.02, sexual harassment must rise to the level of creating a hostile work environment. *See, e.g.*, *Ault v. Oberlin Coll.*, 620 F. App'x 395, 399 (6th Cir. 2015). A *prima facie* case of hostile work environment based on sexual harassment requires Plaintiff to prove that:

> (1) the sexual harassment was unwelcome, (2) the harassment was based on sex, (3) the harassing behavior was sufficiently severe or pervasive to affect the terms, conditions, or privileges of

---

[2] In his complaint, Plaintiff also alleges he was subject to retaliation for "rejecting [his supervisor's allegedly sexual] overtones." Doc. No. 2 at PageID 20. It is not clear whether Plaintiff intended to bring both a hostile work environment and retaliation claim based on sexual harassment. Plaintiff does not elaborate on this allegation in his summary judgment opposition memorandum. Doc. No. 22. For that reason, to the extent that Plaintiff intended to sue for retaliation under Ohio Rev. Code § 4112.02, the Court finds he waived that claim by not opposing Defendant's properly supported summary judgment motion on that count. *See, e.g.*, *Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018).

> employment, or any matter directly or indirectly related to employment, and (4) the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

"Severe or pervasive" conduct is that which is "enough to create an environment that a reasonable person would find objectively hostile or abusive, and that he or she subjectively regarded the environment as abusive." *Id.* at 333. "[S]exual comments and harassing acts of a 'continual' nature are more likely to be deemed pervasive." *Id.* (quoting *Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). "When assessing the hostility of a work environment, courts and juries consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

Though Plaintiff claims he was subject to repeated sexual harassment from his supervisor, his only concrete allegation concerns the lap dance incident. Doc. No. 22 at PageID 527. He insists that the same supervisor would call and text him after work and ask him to join her in a supply closet, which he interpreted to be unsolicited sexual advances. *Id.* But Plaintiff submitted no text messages or call records to support his allegations of repeated sexual harassment. Nor did he depose the female supervisor or any other witness who could speak to the interactions he allegedly had with his supervisor. Plaintiff's harassment allegations, therefore, are not supported by the type of competent evidence necessary to survive summary judgment. *See, e.g.*, *Alexander*, 576 F.3d at 558 ("[T]he party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to

demonstrate that a genuine issue on a material fact exists, and that a trial is necessary"); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("Evidence submitted in opposition to a motion for summary judgment must be admissible.  Hearsay evidence . . . must be disregarded") (quotation omitted) (cleaned up).

The admissible evidence before the Court -- viewed in the light most favorable to Plaintiff -- demonstrates, at most, an isolated allegation of sexual misconduct.  That one incident, if true, does not show he experienced a pattern of sexual harassment.  *See, e.g.*, *Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 298 (6th Cir. 2015) (affirming summary judgment for employer where incidents consisted of sporadic comments, one gesture, and one incident of harassing coworker exposing her breasts); *Baugham v. Battered Women, Inc.*, 211 F. App'x 432, 439–40 (6th Cir. 2006) (one-off comments and incidents, even over the course of three years, did not show the workplace "was permeated with discriminatory intimidation, ridicule, and insult"); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 344 (6th Cir. 2005) (affirming summary judgment for the employer where incidents consisted of several inappropriate jokes and two instances where coworker placed vibrating pager on the plaintiff's leg).  Plaintiff's hostile work environment claim, therefore, fails as a matter of law.

## IV.

For the foregoing reasons, the Court (1) **GRANTS** Defendant's motion for summary judgment (Doc. No. 17); and (2) **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

Date:  September 27, 2021              s/Michael J. Newman
                                        Hon. Michael J. Newman
                                        United States District Judge

9